**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**CHRISTOPHER MARTINEZ,**

                    **Plaintiff,**

**v.**                                                                **No. 1:21-cv-0622-JHR**

**KILOLO KIJAKAZI, Acting Commissioner**
**of Social Security,**

                    **Defendant.**

**MEMORANDUM OPINION AND ORDER AFFIRMING THE DECISION OF THE**
**COMMISSIONER DENYING BENEFITS**

Before the Court is Plaintiff Christopher Martinez's Motion to Reverse and Remand with

Supporting Memorandum. [Doc. 24]. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil

Procedure 73(b), the parties consented to Magistrate Jerry H. Ritter resolving Martinez's challenge

to the Commissioner's final decision on his application for Social Security benefits and entering

final judgment in this appeal. [Doc. 11]. Having reviewed the parties' briefing and the

Administrative Record ("AR") [1], the Court denies Martinez's motion and affirms the decision of

the Administrative Law Judge ("ALJ").

**I.      BACKGROUND AND PROCEDURAL HISTORY**

Martinez argues that the ALJ's decision finding him able to frequently interact with

coworkers and supervisors and incidentally interact with the public in a simple work setting is

internally inconsistent, not supported by substantial evidence, and the product of legal error

considering his mental limitations. [Doc. 24, p. 2]. The Commissioner responds that the ALJ

reasonably considered inconsistent evidence in assessing Martinez's limitations and adequately

---

[1] Document 15 comprises the sealed Certified Transcript of the Administrative Record.  The Court cites the Record's
internal pagination rather than the CM/ECF document number and page.

1

accounted for his mental limitations. [Doc. 28, p. 8, 10]. The Commissioner also argues that any error is harmless considering the requirements of the jobs the vocational expert deemed Martinez capable of performing. *Id.* at 12, 13.

Martinez filed protectively for disability insurance benefits ("DIB") under Title II and for supplemental security income ("SSI") under title XVI on September 25, 2018, alleging disability beginning on June 1, 2018. AR at 15. These claims were initially denied on May 29, 2019, and again upon reconsideration on October 1, 2019. AR at 15. A telephonic hearing was held on August 20, 2020. AR at 15. The ALJ issued her final decision denying benefits on February 3, 2021. AR at 15-27.[2]

## II.   THE COMMISSIONER'S FINAL DECISION

A claimant seeking disability benefits must establish that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Administration applies a five-step sequential analysis to determine benefits eligibility.[3] 20 C.F.R. § 404.1520(a)(4).

At step one of the analysis, the ALJ found that Martinez had not engaged in substantial gainful activity since the onset date of June 1, 2018. AR at 17. At step two, he found that Martinez

---

[2] Claimants who are denied benefits by the Administration must obtain a "final decision" from the Administration before they may appeal the denial to a federal district court. *See* 42 U.S.C. § 405(g). Generally, when the Administration's Appeals Council denies review after the ALJ denies benefits, the ALJ's decision is "final" enough for a district court to review. 20 C.F.R. § 422.210(a); *see also Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003) (finding that the Appeals Council's denial of review made an ALJ's decision to deny benefits "the Commissioner's final decision for purposes of review").

[3] These steps are summarized in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016). Regulations for determining whether a claimant is disabled for purposes of both DIB and SSI are identical but are nonetheless codified in two separate parts of the Code of Federal Regulations. Part 404 of Title 20 governs DIB while Part 416 governs SSI. The Court cites only the applicable regulations in Part 404, but the analogous regulations in Part 416 apply as well.

had severe impairments: post-traumatic stress disorder ("PTSD"), borderline intellectual functioning, somatic symptom disorder, major depressive disorder, attention deficit hyperactivity disorder, opioid related disorder, stimulant use disorder, methamphetamine and cocaine use, bilateral carpal tunnel syndrome, obesity, and sciatica.  AR at 17.

At step three, the ALJ found that Martinez's impairments, individually and in combination, did not meet or medically equal any impairment listed in Appendix 1 to C.F.R. Title 20, Part 404, Subpart P. AR at 18.  At this step, the ALJ found that Martinez had several mental limitations: a moderate limitation in understanding, remembering, or applying information; a marked limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing oneself.  AR at 19-20. In describing the marked limitation, the ALJ noted that Martinez described "significant anxiety and nervousness causing him significant difficulty getting along with others, culminating in his being terminated" from jobs. *Id.* Martinez's legal history and interview with Dr. La Court corroborated this. AR at 20

When a claimant does not meet a listed impairment, the ALJ must determine the claimant's residual functional capacity ("RFC").  20 C.F.R. § 404.1520(e).  The RFC is a multidimensional description of the work-related abilities a claimant retains despite his impairments. 20 C.F.R. § 404.1545(a)(1).  It "does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*."  Social Security Ruling ("SSR") 96-8p at *Definition of RFC*.  The ALJ determined that Martinez could do the following:

> Perform light work . . . except he can frequently climb ramps and stairs, can occasionally stoop, kneel, frequent[ly] crouch, balance, can never crawl, can never climb ladders, ropes or scaffolds. The claimant can frequently handle and finger bilaterally. The claimant can perform simple routine work, can have frequent interaction with supervisors and coworkers, can have incidental interaction with members of the public, can remain on task for two hours at a time, and can make simple work-related decisions in a workplace with few changes in the routine work

setting. He cannot perform assembly line production work or perform work in tandem with other employees.

AR at 20-21. The ALJ reached these conclusions after considering all of Martinez's symptoms and the consistency of those symptoms with all record evidence as required by 20 C.F.R. §§ 404.1520c, 404.1529, and SSR 16-3p. AR at 21.

Among other evidence, the ALJ discussed Martinez's statements at the hearing and the medical evidence. The ALJ noted Martinez's narration that his anxiety and depression prevented him from working due to angry outbursts, low energy, recurrent thoughts, and feeling jittery, sweaty, and nervous. AR at 21. The ALJ considered his history of illicit stimulant and opioid use and interpersonal difficulties at work. AR at 21. She also accounted for Martinez's reported physical ailments including back pain, which Martinez claimed limited his standing, sitting, or walking. AR at 21. Martinez further described manipulative limitations of tingling, numbness, and "trigger finger" for which he had surgery. AR at 21, 22.

The ALJ additionally considered Martinez's daily activities. AR at 22. Martinez described living next door to his parents and his mother and daughter helping him with chores, cooking (though he prepares simple meals), and shopping. AR at 22. His days comprised "walking around doing activities outside such as feeding his dogs" and not driving much. AR at 22. The ALJ documented Martinez's participation in family events, although family and friend interactions allegedly became "increasingly difficult." AR at 22. She further noted that Martinez took his medications, had not seen a psychologist since the start of the pandemic, reported sleeping difficulties, and continued using methamphetamines (up until three months before the hearing). AR at 21, 22. In summarizing this evidence, the ALJ found that Martinez's statements about his symptoms' alleged intensity, persistence, and limiting effects were not entirely consistent with the medical evidence and his "extensive activities of daily living and functioning." AR at 22.

4

The ALJ also considered the medical evidence of mental health. She documented that nurse practitioner Gilmore at Presbyterian Healthcare Services saw Martinez for psychiatric care and observed him calmly sitting, making eye contact, being polite and cooperative, and denying hallucinations or suicidal thoughts. AR at 22. Gilmore also endorsed Martinez's steady gait and lack of psychomotor tics. AR at 22. The ALJ noted that Martinez reported feeling anxious and depressed since discontinuing methamphetamine, and Gilmore diagnosed him with ADHD, PTSD, stimulant use disorder, and mild opioid use disorder. AR at 22. Gilmore prescribed medication but not inpatient treatment. AR at 23. The ALJ observed that Martinez returned twice for medication changes, irritability, and sleep issues, which improved when he stopped using illicit drugs. AR at 23.

The ALJ considered Gilmore's mental status examinations to be "consistently within normal limits, which was consistent with [Martinez's] mental status examinations at the consultative examinations." AR at 23. The ALJ compared Gilmore's findings against the normal mental examinations by consultative examiners Dr. Manole, Dr. Arcuri, and Dr. LaCourt. AR at 23. She noted, however, that formal testing showed that Martinez had borderline cognitive functioning. AR at 23.

The ALJ found consultative examiner Dr. LaCourt's opinion generally persuasive. AR at 23. She reconciled Dr. LaCourt's finding of a marked social limitation, which she adopted, with the evidence to the contrary. AR at 24. The ALJ analyzed Dr. LaCourt's conclusions (supported by his observations and medical evidence) that Martinez had mild to moderate limitations in understanding, remembering, and applying information, as well as in persistence and pace, and marked social limitations. AR at 24. But the ALJ observed that Martinez's daily activities undermined the limitations. AR at 24. She explained:

> Although the marked social limitations are not supported by observations of
> appropriate eye contact, or consistent with the medical record which consistently
> demonstrates that the claimant spends time with friends and family (Exhibit 9F), I
> have, consistent with this opinion, assessed the claimant with marked limitations in
> this area based on his subjective reports and Dr. LaCourt's conclusions.

AR at 24. She also found the State agency psychological opinions generally persuasive because they were consistent with the medical record and with Dr. LaCourt's and Dr. Alcuri's findings. AR at 24. She found particularly persuasive the State agency's light work restrictions because they were consistent with Martinez's daily activities, the medical evidence, and Dr. Manole's findings. AR at 25.

The ALJ found the evidence "consistent with limitations to simple, routine work." AR at 25. In light of Martinez's daily activities and relationships with family and friends, the ALJ determined that he could frequently interact with supervisors and coworkers and incidentally interact with the public. AR at 25. Based on his formal testing and mental status evaluation, the ALJ concluded that Martinez could stay on task for two hours at a time, make simple work decisions, and remain in a workplace with few daily changes. AR at 25. However, his distractibility ruled out work involving assembly lines or in tandem with other employees. AR at 25.

The ALJ surveyed the medical evidence concerning Martinez's physical ailments, ultimately concluding that "[t]here are no records showing recent treatment for physical impairments consistent with [Martinez's] alleged limitations in physical functioning." AR at 24. She noted Dr. Manole's records that Martinez did not need an assistive device to walk, displayed a normal gait, and showed good hand-eye coordination. AR at 23-24. She also considered that hip and lumbar x-rays were largely unremarkable and only showed mild degenerative changes. AR at 24. Martinez underwent trigger finger and carpal tunnel release surgery in March 2018, but no

follow-up records appear. AR at 24. Although he reported back, knee, and hand pain, no documentation substantiated these complaints. AR at 24.

At step four, the ALJ determined that Martinez could not return to his past relevant work as a lubrication technician. AR at 25. At step five, the ALJ concluded that jobs existed in significant numbers in the national economy which Martinez could perform, considering his age, education, work experience, and RFC. AR at 26. A vocational expert testified that Martinez could perform the requirements of an advertising material distributor, a cleaner/housekeeper, and a collator/operator. AR at 26-27. The ALJ found the vocational expert's testimony consistent with the Dictionary of Occupational Titles' ("DOT") information. AR at 27. For these reasons, the ALJ ultimately found that Martinez was not disabled. *Id.*

## III.   <u>STANDARD OF REVIEW</u>

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)).   A deficiency in either area is grounds for remand.   *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).   The Commissioner's findings are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, requiring more than a scintilla but less than a preponderance.   *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).   A decision is not based on substantial evidence if it is overwhelmed by other record evidence.   *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014).

IV.   **ISSUE PRESENTED**

 Whether the ALJ failed to properly consider the effect of marked and moderate limitations regarding Martinez's mental abilities where the ALJ formulated the RFC with specific mental limitations, addressed social interactions, and specifically explained the interplay between the RFC and these limitations?

V.   **ANALYSIS**

Martinez's overarching argument is that "the ALJ failed to consider properly the impact of the marked limitation and moderate limitations in Mr. Martinez's mental abilities on the RFC." [Doc. 24, p. 13]. Martinez contends that the ALJ did not base the RFC on all relevant evidence. *Id.* He also asserts that internal inconsistencies between his mental limitations and the RFC render the ALJ decision unreviewable and unsupported by substantial evidence. *Id.* at 16. He further urges that the ALJ ignored limitations relevant to the RFC and thereby committed legal error. *Id.* at 20.

The Commissioner takes the position that the ALJ fully considered Martinez's mental limitations and incorporated them into the RFC. [Doc. 28, p. 7]. The Commissioner says the ALJ properly assessed conflicts between Martinez's statements, his daily activities, and the medical evidence in compliance with the regulations. *Id.* at 8-9. The Commissioner further contends that the ALJ incorporated the mental limitations by limiting Martinez's type of work. *Id.* at 12-13. Finally, the Commissioner urges that any error would be harmless because the vocational expert identified jobs requiring the least amount of human contact possible. *Id.*

The Court concludes that Martinez's arguments are not well-taken. The Court finds that the ALJ properly considered Martinez's marked and moderate mental limitations in the RFC and, even if the ALJ erred, any error is harmless.

**A.  The ALJ properly incorporated Martinez's mental limitations into the RFC and explained her reasoning.**

Administrative law judges are required to weigh medical source opinions and provide "appropriate explanations for accepting or rejecting such opinions." *Silva v. Colvin*, 203 F. Supp. 3d 1153, 1164 (D.N.M. 2016). These explanations must "provide good reason in the notice of determination or decision for the weight he assigned an opinion." *Adolph v. Berryhill*, No. CV 17-0191 KBM, 2018 WL 1415182, at * (D.N.M. Mar. 21, 2018) at *4 (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)) (internal quotation omitted). A court's job is to compare the administrative law judge's findings to a medical source's opinion on residual functional capacity. *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016). There is no regulatory requirement that an RFC finding and a specific medical opinion on functional capacity directly correspond. *Lane v. Colvin*, 643 F. App'x. 766, 769 (10th Cir. 2016) (citing *Chapo v. Astrue*, 682 F.3d 1285, 1285, 1288 (10th Cir. 2012)). Rather, an administrative law judge may incorporate limitations "by stating how the claimant was limited in the ability to perform work-related activities." *Smith* at 1268-69 (citing *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015)).

The ALJ properly followed this approach in this case. At step three, the ALJ found that Plaintiff had moderate limitations in the following areas: understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself. AR at 19-20. She also found a marked limitation in interacting with others. AR at 20. A marked limitation is described as an impairment in a particular domain which "interferes seriously with your ability to independently initiate, sustain, or complete activities." POMS DI 25225.020 B (Policy- Marked Limitation).  In finding a marked limitation, the ALJ described Martinez's feeling that his anxiety and nervousness causes difficulty with others. AR at 20. She also noted Martinez's

legal history and termination from past employment. AR at 20. It is these limitations, especially

the marked limitation, which Martinez avers the ALJ failed to properly consider.

The ALJ accounted for these limitations in the RFC. The portion of the RFC addressing

Martinez's mental limitations provides:

> The claimant can perform *simple routine work*, can have *frequent interaction with*
> *supervisors and coworkers*, can have *incidental interaction with members of the*
> *public*, can *remain on task for two hours at a time*, and can *make simple work []*
> *related decisions* in a workplace with *few changes in routine work setting*. He
> *cannot perform assembly line production work or* perform *work in tandem* with
> other employees.

AR at 20 (emphasis added). In reaching this RFC, the ALJ explained her reasoning and the

evidence she relied on or disregarded. AR at 21-23. She described Martinez's own testimony,

including being fired for insubordination as well as his early drug abuse. AR at 21, 22. She noted

that Martinez participated in family events, received help from his mother and daughter, and lived

next door to his parents, although interactions were sometimes difficult. AR at 22. The ALJ

consequently concluded that Martinez's statements on his symptoms' intensity, persistence, and

limiting effects were not entirely consistent with other evidence. AR at 22.

The ALJ explained the medical evidence she considered in the RFC, including psychiatric

care with nurse practitioner Gilmore. AR at 22. She noted that Gilmore observed a polite and

cooperative Martinez sit calmly, make eye contact, and not require inpatient treatment. AR at 22.

She summarized Gilmore's mental status examinations as "consistently within normal limits,

which was consistent with [Martinez's] mental status examinations at the consultative

examinations." AR at 23. She then discussed other examiners' mental assessments, including

consultative examiner Dr. LaCourt's opinion, which documented Martinez's normal affect. AR

at 23.

After these detailed explanations of the evidence, the ALJ explained her mental RFC finding of simple, routine work considering her assessment of a marked social limitation. She reasoned:

> Despite his legal history and reports of difficulty with others, the claimant's reports of *activities with family and friends*, his *care for his and his parents' home and property*, and his *ability to retain close family relationships* are *consistent with an [RFC] that allows frequent interactions with supervisors and coworkers and incidental interaction with members of the public.* AR at 23 . . . His history of distractibility is not consistent with the ability to perform assembly line production work or perform work in tandem with other employees.

AR at 23 (emphasis added).  The ALJ also considered, weighed, and explained her reasoning for the weight she assigned various medical opinions. AR at 24-5. She specifically addressed the marked limitation in the course of explaining why she found Dr. LaCourt's opinion generally persuasive:

> [A]lthough the *marked social limitations are not supported by observations of appropriate eye contact, or consistent with the medical record* which consistently demonstrates that the *claimant spends time with friends and family* (Exhibit 9F), I have, consistent with this opinion, assessed the claimant with marked limitations in this area based on his subjective reports and Dr. LaCourt's conclusions.

AR at 24 (emphasis added). She considered and explained the weight she assigned the State agency consultants' opinions as well. AR at 24-25. Martinez does not appear to allege the ALJ failed to properly weigh the medical opinions, but even if he does, the Court finds no error.

The Court is able to follow the ALJ's reasoning described above and meaningfully review her decision. The Court finds that the ALJ properly resolved and explained any evidentiary inconsistencies between the marked social limitation and the RFC and that her logic is not internally inconsistent nor the product of legal error. The regulations require the ALJ to consider other evidence and assess various factors, such as Martinez's daily activities, against his subjective complaints. 20 CFR § 202.1529(3)(i). This is precisely what she did when she analyzed the marked

11

social limitation and evidence undercutting it, such as Martinez's appropriate demeanor and relationships with family and friends. AR at 23-24. That Martinez does not agree with the evidence does not mean the ALJ used it improperly. *See Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010) (holding that an ALJ should consider the nature of daily activities among other factors in assessing subjective complaints).

The Court finds that the ALJ properly explained her reasoning on mental limitations in the RFC by determining that Martinez could frequently interact with coworkers but only incidentally with the public. AR at 23; *see Smith*, 821 F.3d at 1268 ("[T]he judge arrived at an assessment between the two medical opinions without fully embracing either one. We upheld this approach in *Chapo*"). She also properly explained her analysis of Dr. LaCourt's opinion and measured it against inconsistent evidence. *See* 20 CFR § 404.1520c(b)(2) (outlining supportability and consistency as the most important factors in assessing a medical source opinion). The Court does not discern any errors warranting remand here.

The Court is unable to discern why Martinez believes the RFC is deficient regarding the marked social limitation. Martinez states that the ALJ cannot "exclude the step three findings at step four" and so the decision does not reflect the proper legal standards. [Doc. 24, p. 14]. Martinez quotes regulations concerning categories of mental impairment, POMs about marked limitations, and rules regarding work-related mental activities. *Id.* He then jumps to the conclusion that an RFC allowing frequent coworker contact and incidental public contact is incompatible with the marked limitations. *Id.* at 15. However, Martinez fails to provide a nexus between these legal statements and his conclusions. Without a substantive analysis explaining why and how the ALJ erred in this regard, the Court cannot credit Martinez's conclusory arguments.

Martinez seems to urge the Court to reweigh the evidence on mental limitations. *Id.* at 16-18.  The Court is prohibited from reweighing evidence or substituting its own judgment. It is well-settled that an ALJ is not required to discuss every piece of evidence. *Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2018) (internal citation omitted). The ALJ complied with her duty to assess and weigh competing evidence using her judgment following the regulations.

**B.**  **The ALJ accounted for Martinez's limitations by restricting his work-related activity.**

The Commissioner contends that the ALJ accounted for Martinez's moderate limitations by restricting him to simple, routine work. [Doc. 28, p. 11]. The Commissioner cites *Smith v. Colvin* and *Adolph v. Berryhill* in support. *Id.*  The Court finds this argument persuasive.

In *Smith*, the claimant argued that the administrative law judge should have included moderate nonexertional impairments in the residual functional capacity. *Smith*, 821 F.3d at 1268-69. A physician opined that that claimant was moderately limited in her ability to perform nine functions, including: maintaining concentration, persistence, and pace; working with others without getting distracted; getting along with coworkers or peers; and accepting instructions and responding appropriately to supervisor criticism. *Id* at 1268. The physician concluded that the claimant could perform limited complexity work and manage infrequent and short social interactions. *Id.* The administrative law judge determined that the claimant could only do simple, repetitive, and routine tasks and could not have fact-to-face public contact. *Id.* at 1269. The Tenth Circuit found that the administrative law judge thus "incorporated the functional limitations of [the claimant's] nonexertional impairments." *Id.*  The Tenth Circuit approved this approach, stating that although "[t]he administrative law judge in *Lee* and in our case did not repeat the moderate limitations assessed by the doctor," they both "incorporated these limitations by stating how the claimant was limited in the ability to perform work-related activities." *Id.*

The Commissioner's second case, *Adolph v. Berryhill*, applied the same approach. *Adolph*, 2018 WL 1415182, at *7. *Adolph* found that substantial evidence supported limiting the claimant to superficial interactions with coworkers (among other restrictions), which thereby incorporated a physician's specific limitations. *See id.*

The same is true here. The ALJ properly included Martinez's marked and moderate limitations in the RFC by crafting specific social limitations of frequent coworker interaction and incidental public interaction. *See* AR at 20-21. She explained that she did not endorse a greater social limitation because it would be inconsistent with Martinez's close family and friend relationships and daily activities. AR at 23-24. She also prohibited assembly line or other in-tandem work because of Martinez's distractibility. AR at 21. The ALJ reasonably incorporated Martinez's mental and social limitations in determining his ability to perform work-related activities. The Court finds no basis to remand.

### C. **Any error by the ALJ is harmless.**

The Court also accepts the Commissioner's harmless error argument. The Commissioner contends that the three jobs the vocational expert identified require only "the lowest possible level of human interaction that exists in the labor force," and thus any RFC error would be harmless. [Doc. 28, at p. 13] (citing *Lane*, 643 F. App'x at n.1).  The DOT ranks the level of human interaction a job requires on a scale of zero to eight. DOT, Appendix A | U.S. Department of Labor (dol.gov). A rating of eight (appearing in the job code's fifth number) indicates the lowest level of human interaction possible. *Id.* The jobs here require minimum human contact: advertising

material distributor (230.687101)[4], cleaner/housekeeping (323.687-014)[5], and collator/operator 208.685-101. AR at 26-27 (emphasis added)[6]. Consequently, the Commissioner argues that these three jobs would still apply even if the ALJ had included stricter mental limitations.

The Commissioner cites an instructive case on point. In *Lane,* the claimant argued that the RFC should have expressly included an opining physician's limitation to infrequent contact with supervisors. *Lane*, 643 F. App'x at 769. The ALJ instead limited the claimant to "low stress work," but was silent on coworker interaction. *Id*. While the court expressed clarity concerns, it nonetheless declined to remand because "the capacity required to do the jobs identified . . . is not contrary to [the physician's] limitations regarding interaction with supervisors and coworkers." *Id*. The court explained that the jobs did not require frequent or prolonged contact and cited the DOT job codes. *Id.* at 770, n.1. The Tenth Circuit thus affirmed on the basis of harmless error "[b]ecause there is no actual conflict between a limitation on frequent and prolonged interaction with supervisors and co-workers and the bottling-line attendant job." *Id.* at 770.

The same principle applies here so that, even if the RFC should have included stricter mental limitations, the error is harmless. As in *Lane*, the capacity to work as an advertising material

---

[4] 230.687-010 Advertising-Material Distributor: Distributes advertising material, such as merchandise samples, handbills, and coupons, from house to house, to business establishments, or to persons on street, following oral instructions, street maps, or address lists. May be designated according to type of advertising material distributed as Handbill Distributor (any industry); Pamphlet Distributor (any industry); Sample Distributor (any industry).
GOE: 07.07.02 STRENGTH: L GED: R1 M1 L1 SVP: 2 DLU: 77. Dep't of Labor, *Dictionary of Occupational Titles*, Fourth Ed., Occupational Definitions, OALJ Law Library, DOT, CLERICAL AND SALES OCCUPATIONS 219.362-050 to 243.367-018 | U.S. Department of Labor (dol.gov).
[5] 323.687-014 Cleaner, Housekeeping: Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets. Performs other duties as described under CLEANER (any industry) I Master Title. May be designated according to type of establishment cleaned as Beauty Parlor Cleaner (personal ser.); Motel Cleaner (hotel & rest.); or according to area cleaned as Sleeping Room Cleaner (hotel & rest.).
GOE: 05.12.18 STRENGTH: L GED: R1 M1 L1 SVP: 2 DLU: 86. *Id.*
[6] 208.685-101 Collator Operator (clerical):   Tends machine that assembles pages of printed material in numerical sequence: Adjusts control that regulates stroke of paper pusher, according to size of paper. Places pages to be assembled in holding trays. Starts machine. Removes assembled pages from machine.
GOE: 05.12.19 STRENGTH: L GED: R2 M1 L1 SVP: 2 DLU: 77. *Id.*

distributor, cleaner/housekeeper, and collator/operator is not contrary to the RFC's specific mental limitations. AR at 20, 389. None of these jobs require sustained or prolonged social activity with coworkers or supervisors which would run afoul of marked social limitations. *See supra*, n. 1-3; *see also* 20 CFR § 416.926a(2) (defining a marked limitation as "interfer[ing] seriously with your ability to independently initiate, sustain, or complete activities"). Thus, these jobs would persist with even stricter social limitations than those in the RFC.

An ALJ's error is harmless where no reasonable administrative factfinder following the correct analysis could have factually resolved the matter differently, considering the material the ALJ considered. *Lane*, 643 F. App'x. at 769-770 (citing *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)). The step five test is whether a significant number of jobs exist in the national economy. *Id.* Here, the vocational expert testified that the cleaner/housekeeper job has 420,000 jobs nationally, which alone satisfies the step five threshold (Martinez does not contest this). AR at 27. Thus, the Court finds that no reasonable administrative factfinder would have found differently and no actual conflict exists between the RFC's mental limitations and these jobs. *See Lane*, 643 F. App'x. at 770. Any ALJ oversight in this regard is harmless error.[7]

**VI.     CONCLUSION AND ORDER**

**IT IS THEREFORE ORDERED** that Plaintiff Christopher Martinez's Motion to Reverse and Remand, [Doc. 24], is **DENIED** and the Commissioner's Final Decision in this case is **AFFIRMED**.

Jerry H. Ritter
U.S. Magistrate Judge
Presiding by Consent

---

[7] The Court notes that Martinez did not file a reply brief, and thus presents no arguments rebutting the harmless error argument.